J-S23001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.M.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2692 EDA 2016 |

Appeal from the Order Entered July 25, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations Division at No(s):  CP-51-AP-0000607-2016;
FID: 51-FN-001355-2013

BEFORE:   OLSON, SOLANO, and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 04, 2017**

T.D. ("Father") appeals from the decree and order entered on July 25, 2016, terminating his parental rights to his female child, J.M.D. ("Child") (born in April of 2006), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511, and changing the permanency goal for Child to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

In its opinion entered on November 29, 2016, the trial court set forth the following factual background and procedural history of this appeal, which we incorporate as this Court's own.  **See** Trial Court Opinion, 11/29/16, at 2-

_____

[1] In a separate decree entered on that same date, the trial court terminated the parental rights of Child's mother, J.R. ("Mother").  Mother has not filed an appeal from the termination of her parental rights to Child, nor is she a party to the instant appeal.

18. Importantly, on July 8, 2016, the Philadelphia Department of Human Services ("DHS" or "the Agency") filed a petition to involuntarily terminate Father's parental rights and change Child's permanency goal to adoption. On July 25, 2016, the trial court held an evidentiary hearing on the termination and goal change petitions.[2] The trial court issued findings of fact with regard to the evidentiary hearing as follows.

> T.D., Father[,] was present and represented by his attorney. (N.T. 7/25/2016, p.6 at 14-18).
>
> The Assistant City Solicitor's first witness was Sherice Blount, DHS Social Worker, assigned to this family's case in August 2015 until April 2016. She noted that in January 2013, there was a GPS Report that alleged that J.M.D. pushed her brother down a flight of stairs. That Report was substantiated. There was a subsequent GPS Report in March 2013 with allegations that the home was dirty and it lacked appropriate food. There were also allegations that Mother was using marijuana and cocaine, and using her food stamps to purchase the drugs. That Report was substantiated. DHS implemented in-home protective services and subsequently the Children came into placement. (N.T. 7/25/2016, p.16 at 13-25; p.17 at 1-10).
>
> [Ms. Blount] testified a Family Service Plan (FSP) Meeting was held on July 22, 2015, and Father's objectives were that he would make his whereabouts known. Prior to that, the [c]ourt [o]rdered Father on May 13, 2015, to provide mental health documentation. (N.T. 7/25/2016, p.21 at 24-25; p.22 at 1-3; p.25 at 17-25).
>
> Ms. Blount further testified that the Court found on July 28, 2015 that Father had not provided DHS with a copy of the Mental

---

[2] In its opinion, the trial court noted that Child's four siblings: D.C. (born in December of 2008); E.T. (born in April of 2010); L.R. (born in July of 2012); and J.R. (born in August of 2014), were also subjects of the hearing on July 25, 2016. Trial Court Opinion, 11/29/16, at 1 n.1, 16 n.2.

Health Report as [o]rdered by the [c]ourt at the last listing. Further[,] the [c]ourt found that the parents have not visited [c]hild on a consistent basis. She noted that she had never met the Father and today at this hearing was the first time she had seen him. (N.T. 7/25/2016, p.27 at 13-25; p.28 at 1-13).

Ms. Blount testified that the FSP and other documentation had been mailed to Father at the address that the Agency had, however, she never had contact with him. She noted that during the term of her involvement in the case there was no contact between [] Child and [] Father. (N.T. 7/25/2016, p.30 at 10-19).

Ms. Blount stated she believed there was no bond between [] Child and Father because Father had never contacted her nor the previous DHS worker, nor had he contacted [] Child. She opined that [] Child would not suffer irreparable harm if Father's parental rights were terminated. (N.T. 7/25/2016, p.31 at 7-19).

Regarding the foster parent, M.A., Ms. Blount stated [] Child is bonded with her foster parent. She observes caring and affection between the two, and [] Child is very helpful to her foster parent, listens and tries hard to follow the directions of her foster parent. Ms. Blount believes it is in the best interest of [] Child (and the other [c]hildren) that they be adopted. (N.T. 7/25/2016, p.31 at 20-25; p.32 at 1-14).

The next witness to testify was Kamesh Callands, the CUA Wordsworth [c]aseworker. She stated she was assigned this case in April 2016, and noted that Father never contacted her nor visited [] Child. She noted letters were sent to Father, however, he never responded. She opined there is no parental bond between [] Child and Father because Father has not visited her. Also she believes [] Child would not suffer irreparable harm if Father's parental rights were terminated. (N.T. 7/25/2016, p.33 at 6-25; p.34 at 1-8, 20-25; p.35 at 1-2).

Regarding the [f]oster [p]arent, M.A., Ms. Callands stated [] Child is safe and all her needs are being met by the [f]oster [m]other. The safety date for the [c]hildren was 7/13/2016. Ms. Callands reported that they are bonded. M.A. is a great caregiver and parent to [] Child and the rest of the [c]hildren. Only one sibling, J.R., is not in the same home. Further, Ms.

Callands noted that M.A. is the pre-adoptive home foster parent through Devereaux. She opined it is in the best interest of [] Child to be adopted. (N.T. 7/25/2016, p.35 at 3-22).

Father, T.D., was next to testify. He stated he has telephone contact with [] Child every two months, and the last time he spoke to her was before the summer began. He stated he spoke to her for about 20 minutes and asked her how school was and how she was doing. He finally stated he does not want his parental rights terminated. (N.T. 7/25/2016, p.39 at 16-25; p.40 at 1-25; p.41 at 1-14).

Trial Court Opinion, 11/29/16, at 16-18 (footnote omitted).

At the conclusion of the hearing, the trial court found clear and convincing evidence to terminate Father's parental rights and change Child's permanency goal to adoption, and entered its termination decree and goal change order. On August 22, 2016, Father filed a notice of appeal with concise statement of errors complained of on appeal pursuant to Pa.R.A.P 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises the following issues:

1. Whether the trial court erred in terminating Appellant's parental rights under 23 Pa.C.S.A. section 2511(a)(1), the evidence having been insufficient to establish Father had evidenced a settled purpose of relinquishing parental claim, or having refused or failed to perform parental duties[?]

2. Whether the trial court erred in terminating Appellant's parental rights under 23 Pa.C.S.A. section 2511(a)(2), the evidence having been insufficient to establish Father caused [C]hild to be without essential parental care, nor could that not have been remedied[?]

- 4 -

Father's Brief, at 5.[3]

Father argues that the evidence is insufficient to demonstrate that he lacks the capacity to parent. He contends that the record merely reflects a vague reference relating to his failure to produce his mental health report. According to Father, this failure is clearly insufficient for DHS to meet its burden of proof. *See* Father's Brief at 8, 12.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion

---

[3] Father does not challenge section 2511(b) in either his concise statement or his statement of questions involved portion of his brief. We, thus, find that he waived the issue. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). For the same reason, Father has waived any challenge to the change in permanency goal to adoption.

only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on section 2511(a)(2) and (b), and review Father's

challenges together, as did the trial court. Section 2511(a)(2) and (b) provide as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or

mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Termination is warranted pursuant to subsection (a)(2), as Father clearly lacks parental capacity, and the evidence showed that he will be unable to remedy that situation within a reasonable period of time, if ever. As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we find no abuse of the trial court's discretion in finding that Father's parental rights should be terminated under section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

Although Father waived any challenge to section 2511(b), we will analyze the sufficiency of the evidence under that section in accordance with our caselaw. We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of

termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only

dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in and of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

The trial court found as follows with regard to section 2511(a)(2) and (b):

The [r]ecord demonstrates Father's lack of bond with [] Child and lack of contact with [] Child, claiming he had telephone calls every two months. It is clear by the evidence presented that there is no bond between Father and [] Child. Credible evidence was presented of Father's lack of presence and lack of communication with Agency personnel and with [] Child.

After hearing the credible testimony of Sherice Blount, the DHS Social Worker, and Kamesh Callands, the CUA Wordsworth Caseworker, the [c]ourt found by clear and convincing evidence,

- 10 -

that their observations and conclusions regarding Father's noncompliance with the FSP objectives, and lack of contact and communication were persuasive.

* * *

The documents and testimony provided this [c]ourt with clear and convincing evidence that termination of Father's parental rights would be in the best interest of [] Child. This [c]ourt finds credible the testimony from the [a]gency staff members that [] Child would not suffer irreparable harm if Father's rights were terminated and that termination of Father's parental rights would be in the best interest of [] Child. The evidence was clear that Father did not make the effort to communicate with the Agency nor did he contact [] Child. [] Child currently lives in a nurturing and loving home with the [f]oster [m]other, who is bonded to [] Child and meets all of her emotional and physical needs.

CONCLUSION

The [c]ourt found that Father repeatedly failed to complete objectives and failed to make contact or communicate with the Agency and with [] Child. The [c]ourt was not persuaded that Father could or would resolve these issues in the near future to provide permanency and safety for [] Child.

At the conclusion of the hearing the Court stated:

> Regarding [] Child, J.M.D., the evidence is clear and convincing that both parents have failed to remedy any of the issues that brought [] Child into care, have failed to create a parental bond with [] Child and will not be able to create a parental bond with [] Child going forward.
>
> Notwithstanding Father's testimony[,] the existence of a few phone calls every couple of months does not make a parent nor does it create a likelihood that he would be able to parent [] Child.
>
> She has been in care since 2014, with the same caretaker and the evidence is uncontested that she has in fact formed a parental bond with the existing caretaker and does not have a parental bond with either of her natural parents.

> With respect to Father, the evidence established under Section 2511(a)(1) and (2), since [] Child was not in Father's care when removed and the placement has been in excess of one year,[sic] in addition [Section] 2511(b) is satisfied because again there would be no harm in severing a relationship that does not exist. Father's rights are terminated as well as Mother's rights are terminated. And the goal may be moved to adoption for [] Child." [sic]

(N.T. 7/25/2016, p.42 at 10-25; p.43 at 1-17).

> For the foregoing reasons, this [c]ourt respectfully requests that the Order of July 25, 2016 [t]erminating Father, T.D.'s [p]arental [r]ights and changing the [p]ermanency [g]oal to [a]doption, be AFFIRMED.

Trial Court Opinion, 11/29/16, at 19-22.

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *See In re: T.S.M.*, 71 A.3d at 267 (quoting *In re K.K.R.-S.*, 958 A.2d at 535). The Supreme Court instructed, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re: T.S.M.*, 71 A.3d at 267 (quoting *In re Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J. dissenting)).

- 12 -

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-827. There was sufficient, competent evidence in the record for the trial court to find the grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied. There was also sufficient, competent evidence in the record for the trial court to find that Child's best interests are served by her foster mother, and that no bond exists between Child and Father such that Child

would suffer permanent emotional harm from the termination of Father's parental rights. We therefore affirm the order terminating Father's parental rights with regard to Child under section 2511(a)(2) and (b).

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2017